JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Eugenia Lubin

**DEFENDANTS**
Life Insurance Company of North America

**(b)** County of Residence of First Listed Plaintiff   Bergen
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Law Offices of Barbara Comerford
45 Eisenhower Drive, Suite 280, Paramus, NJ 07652
(201) 444-4493

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | New Drug Application | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **SOCIAL SECURITY** | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 864 SSID Title XVI | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☒ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Lawsuit for Long Term Disability Benefits pursuant to ERISA, 29 U.S.C. 1132
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                                          DOCKET NUMBER

DATE  2/7/18

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553   Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

The Law Office of Barbara B. Comerford
45 Eisenhower Drive
Paramus, New Jersey 07652
Telephone: 201-485-8806
Fax: 201-485-7014
**Attorneys for Plaintiff Eugenia Lubin**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENIA LUBIN | Civil Action No. |
| Plaintiff, | COMPLAINT |
| vs. | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | |
| Defendant. | |

Plaintiff, Eugenia Lubin (hereinafter "Plaintiff" or "Ms. Lubin"), by way of Complaint against the Defendant, alleges as follows:

### JURISDICTION

1.      Plaintiff resides at 6 Viola Terrace, Washington Township, NJ 07676.

2.      Defendant, Life Insurance Company of North America d/b/a LINA Group Insurance (hereinafter "Defendant" or "LINA") is an insurance company organized and existing under the laws of the United States, with a principal place of business being 1601 Chestnut Street, Philadelphia, PA, 19192, and is authorized to do business in the State of New Jersey.

3.      Immediately prior to her disability, Ms. Lubin was employed by UBS Financial Services, Inc. (hereinafter "UBS").

4.      By virtue of her employment with UBS, Ms. Lubin was eligible to participate in Group Policy number LK-030545 (Exhibit A), issued by Defendant to the Trustee of the Group

1

Insurance Trust for Employees in the Finance, Insurance and Real Estate Industry (the Trustee), and in which UBS was and/or is a subscriber at all relevant times.

5.      This is a group policy underwritten by Defendant.  Under the terms of the policy, the Trustee is the policyholder and plan administrator and has designated Defendant as claims fiduciary to evaluate claims and pay benefits under the plan.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the claims herein arise under the Employee Retirement Income Security Act 29 U.S.C. § 1132 *et seq.*

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that Plaintiff resides in New Jersey.

### ESSENTIAL FACTS

8.      Plaintiff Eugenia Lubin is a 58 year-old woman.

9.      Prior to her disability, Ms. Lubin worked as a software engineer and Senior Associate of Systems Development at UBS.  Her occupation required her to research, design and develop software  She worked with minimal supervision and supervised others.

10.     In March 2008, Ms. Lubin was diagnosed with breast cancer, specifically bilateral invasive duct carcinoma.

11.     On June 19, 2008, Ms. Lubin underwent a right total mastectomy and left modified radical mastectomy with level 2 and 2 axillary lymph node dissection.

12.     Following her double mastectomy, Ms. Lubin underwent four cycles of chemotherapy beginning in August 2008.

13.     Following the onset of chemotherapy, Ms. Lubin began experiencing cognitive impairment as a result of treatment including impaired memory and concentration.

2

14.     Due to her condition, Ms. Lubin applied for Long Term Disability benefits under the Policy, and LINA approved her claim as of November 18, 2008 after the expiration of the applicable elimination period.

15.     The LTD Policy defines "Disability/Disabled" as follows:

> An Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, is unable to earn more than 80% of his or her Indexed Covered earnings.

16.     Ms. Lubin's chemotherapy continued until August of 2009.

17.     Ms. Lubin continued to experience cognitive impairment following her chemotherapy as a result of the effects of chemotherapy on her nervous system.   These impairments are commonly known as "chemo brain."

18.     Due to the adverse effects of her chemotherapy medication, Ms. Lubin also suffered ovarian failure and underwent a salpingo-oopherectomy—removal of both the ovaries and fallopian tubes—in January 2009.

19.     Ms. Lubin began treatment with Letrozole, an estrogen-blocking drug used to treat breast cancer, which she continues to take to date.

20.     Despite her illness and the effect of chemotherapy on her body, LINA terminated Ms. Lubin's LTD benefits via letter dated June 18, 2009—before her chemotherapy was even complete.

21.     Ms. Lubin, via counsel, appealed LINA's termination via letter dated September 21, 2009. The appeal documented Ms. Lubin's continued disability to breast cancer, symptoms of chemotherapy, and the serious and life changing surgery involving the removal of multiple organs that she was forced to undergo to save her life. It noted that she was undergoing daily hormone therapy and was experiencing fatigue, joint and muscle pain.

3

22.    On October 15, 2009, Ms. Lubin underwent neuropsychological testing with Denise Correa, Ph.D. at Memorial Sloan Kettering Cancer Center, where Ms. Lubin has been treated since 2008.

23.    Dr. Correa performed a full battery of testing and documented impairments in auditory and working memory; cognitive flexibility; semantic fluency; verbal abilities; attention; graphomotor speed; phonemic verbal fluency; visual spatial skills; and abstract reasoning.

24.    Dr. Correa opined that the results of her testing demonstrated "primary executive dysfunction consistent with the frontal symptom disturbance." Given when the symptoms began, Dr. Correa linked them "to the adverse effects of chemotherapy and hormonal treatment."

25.    Despite the substantial medical evidence of record documenting the life threatening illness, major surgery, chemotherapy, removal of ovaries and fallopian tubes, side effects of treatment including joint and muscle pain, fatigue, and sleep disturbance, and objectively documented cognitive impairment due to chemotherapy treatment, LINA sent a letter dated December 10, 2009 advising Ms. Lubin that it determined that her disability was actually a mental illness and that it would only pay her under the policy's 24-month mental-nervous limitation.

26.    On September 15, 2010, Ms. Lubin underwent repeat neuropsychological testing with Wilfred van Gorp, Ph.D. at Columbia University. Dr. van Gorp administered a battery of tests which revealed valid effort and impairments in attention and concentration; verbal and visual memory; executive function particularly in the context of time pressure; processing speed; verbal abilities (even factoring in that Ms. Lubin is not a native English speaker); and visuospatial abilities.

27.    Dr. van Gorp concluded, "Ms. Lubin's cognitive functioning represents a dementia syndrome of unknown origin" and neurologic in nature, likely related to chemotherapy.

28.     In October 2009, Ms. Lubin began treatment with psychiatrist Marina Tourkova, M.D. Dr. Tourkova documented that Ms. Lubin began treatment with her due to secondary anxiety and depression as a result of her life-altering, traumatic and life-threatening disease.

29.     Effective December 18, 2009, Ms. Lubin was awarded Social Security Disability benefits on her initial application based upon a determination that she is disabled from any substantial gainful activity.

30.     LINA benefitted financially from Ms. Lubin's SSA award by enjoying a reduction in her monthly LTD benefit by the amount of her monthly Social Security award.

31.     Ms. Lubin continued to treat for her secondary anxiety and depression as a result of her life-altering, traumatic and life-threatening disease  Over time, Dt. Tourkova would note that these secondary conditions improved.

32.     On February 25, 2011, at LINA's request, Ms. Lubin underwent a neuropsychological evaluation at LINA's request with Dante Mercurio, Ph.D. Dr. Mercurio conceded that Ms. Lubin had valid cognitive impairments "secondary to her breast cancer and subsequent multiple courses of chemotherapy.  This phenomenon ("chemo brain") is well documented in the clinical literature." However, he also incorrectly stated that Ms. Lubin had motivational problems caused by her "perceived" medical condition.

33.     On March 16, 2011, LINA terminated Ms. Lubin's claim for a second time, citing the mental-nervous limitation in the policy and relying upon Dr. Mercurio's report.

34.     On November 7, 2011, Ms. Lubin, via counsel, appealed LINA's second termination of her LTD benefits.

35.     The appeal discussed all of the neuropsychological testing performed on Ms. Lubin, highlighted the flaws in Dr. Mercurio's analysis (including his highlighting below chance results on a test of effort which alone cannot detect malingering, and which did not prevent him

5

from ultimately concluding that Ms. Lubin had valid cognitive impairments), and included updated medical records.

36.     After receiving Ms. Lubin's appeal, LINA referred her file for a paper review.

37.     On January 5, 2012, neuropsychologist Bruce Caplan, Ph.D. reviewed Ms. Lubin's file at the request of LINA's vendor, MLS.

38.     Dr. Caplan opined that Ms. Lubin was cognitively impaired, and that "there is fairly consistent evidence across all three neuropsychological assessments of meaningful deficits in attention, memory, verbal abilities (with the "second language caveat"), and executive functions." He noted that most of her treating physicians viewed her cognitive impairments as a side effect of chemotherapy.

39.     Dr. Caplan concluded that Ms. Lubin could not return to work in her own occupation and that although Ms. Lubin's testing had occurred almost a year prior to his review, "given the comparative longstanding stability of Ms. Lubin's condition as described in the available records, I do not believe that it requires much an excessive inferential leap to extrapolate from these documents."

40.     Based on the substantial medical evidence of record demonstrating that Ms. Lubin was totally disabled by her physical condition, LINA reinstated Ms. Lubin's LTD benefits via letter dated February 16, 2012.

41.     In reinstating benefits to Ms. Lubin, LINA determined that she was disabled by cognitive impairments caused by her chemotherapy treatment. LINA determined that Ms. Lubin was disabled from any work that would earn her the income threshold listed in the LTD policy.

42.     Ms. Lubin remained totally disabled from her physical condition in 2012 and 2013.

43.    On January 14, 2013, Ms. Lubin's Board Certified treating neurologist Igor Khelemsky, M.D submitted an APS to LINA stating that Ms. Lubin remained disabled due to dementia which had resulted in memory loss and cognitive decline.

44.    LINA continued to find Ms. Lubin disabled based upon her physical condition and continued to approve her benefits.

45.    On January 6, 2014, Dr. Khelemsky submitted and APS to LINA stating that Ms. Lubin remained disabled due to dementia and cognitive decline.

46.    LINA continued to find Ms. Lubin disabled based upon her physical condition and continued to approve her benefits.

47.    On November 24, 2014, Dr. Khelemsky submitted an APS to LINA stating that Ms. Lubin remained disabled due to dementia and cognitive decline.

48.    LINA continued to find Ms. Lubin disabled based upon her physical condition and continued to approve her benefits.

49.    On October 26, 2015, Dr. Khelemsky submitted an APS to LINA stating that Ms. Lubin remained disabled due to dementia and cognitive decline.

50.    LINA continued to find Ms. Lubin disabled based upon her physical condition and continued to approve her benefits.

51.    On September 26, 2016, Dr. Khelemsky submitted an APS to LINA stating that Ms. Lubin remained disabled due to dementia and cognitive decline.

52.    Ms. Lubin continued to treat at Memorial Sloan Kettering Cancer Center following the end of her chemotherapy. Through 2016, her providers at Memorial Sloan Kettering documented her disability to side effects of cancer and chemotherapy including pain, fatigue, and cognitive decline, in addition to the side effects of her treatment with hormone therapy.

7

53.     Dr. Khelemsky's office visit notes documented continued cognitive impairment as a result of chemotherapy induced dementia through 2016 including short term memory loss, impaired concentration, and word finding difficulties. He additionally documented fatigue and lightheadedness throughout this time.

54.     On March 9, 2017, at LINA"s request, Ms. Lubin underwent a neuropsychological evaluation with Kenneth Kutner, Ph.D. Dr. Kutner's testing objectively revealed severe deficits in memory and visuospatial processing, which he acknowledged as areas of decline from prior neuropsychological testing.

55.     Despite the substantial medical evidence of record which revealed disabilit8y due to cancer, multiple life-saving and invasive surgeries, and chemotherapy treatment which LINA had accepted for several years as cognitively disabling after multiple rounds of neuropsychological testing and paper reviews, Dr. Kutner concluded that Ms. Lubin was "somatizing," that her disability was not physical, and that what she really suffered from was a psychiatric condition. Dr. Kutner reached this conclusion without performing a single psychological test.

56.     Dr. Kutner concluded that Ms. Lubin was disabled from her own occupation.

57.     On March 29, 2017, LINA terminated Ms. Lubin's LTD benefits for a third time, claiming as Dr. Kutner did that after all she endured health wise and all LINA had accepted as physically disabling since 2008, that Ms. Lubin was in fact suffering from a psychiatric condition. Despite Dr. Kutner conceding severe impairment in memory and visuospatial skills, LINA also claimed that Ms. Lubin's cognitive impairment had improved and that she was able to perform her own occupation.

58.     On September 19, 2017, Plaintiff, via counsel, appealed LINA's third termination of her LTD benefits. The appeal included the expert report of neuropsychologist Kenneth

8

Freundlich, Ph.D., who reviewed the data of record. Dr. Freundlich noted that while Dr. Kutner failed to perform psychological testing in rendering his net opinion that Ms. Lubin's impairments were psychiatric, he also administered different tests than prior examiners administered and then claimed the results had changed.  He also noted that as Ms. Lubin was taking an aromatase inhibitor which is known to lower estrogen levels and "Given the well-established link between estrogen and cognition, it is not surprising that additional cognitive problems may have developed after the 2009 evaluation."

59.     Dr. Freundlich concluded that based on Ms. Lubin's history of breast cancer, bilateral mastectomy and chemotherapy treatment, it was "far more reasonable to attribute Ms. Lubin's well documented cognitive impairments to her well-documented medical history."

60.     The September 19, 2017 appeal also documented Ms. Lubin's comorbid physical conditions including the effects of her treatment and osteopenia.  The appeal documented the arbitrary and capricious nature of LINA's termination of Ms. Lubin's LTD benefits despite any evidence of improvement in her physical condition to warrant same.

61.     In response to Ms. Lubin's appeal, LINA procured the paper review of Sean Connolly, Ph.D., who provided a neuropsychological report at the behest of LINA's hired vendor, Genex.

62.     Despite the substantial medical evidence of record,  Dr. Connolly now concluded that, in fact, Ms. Lubin was not cognitively disabled –whether from a physical or a mental standpoint. His conclusion was despite the multiple evaluations she had undergone, and despite the fact that even Dr. Kutner conceded that she had areas of severe impairment in memory and visuospatial ability that would preclude her from work in her own occupation.

63.     Based on Dr. Connolly's review and that of an occupational medicine physician who incorrectly claimed that Ms. Lubin had no physical restrictions or limitations despite the

substantial medical evidence of record, LINA upheld its third termination of Ms. Lubin's LTD benefits despite the substantial medical evidence of record.

64.     Despite LINA's refusal to pay this valid claim, Ms. Lubin remained totally disabled as a result of her physical conditions.

65.     On April 19, 2018, Ms. Lubin underwent repeat neuropsychological testing with Dr. Freundlich.  Dr. Freundlich's objective testing confirmed deficits in learning and memory; attention/concentration; and processing speed.

66.     Dr. Freundlich stated, "The aforementioned deficits have repeatedly been documented in the prior evaluations, and the current evaluation continues to demonstrate that Mrs. Lubin experiences ongoing cognitive impairments, that are directly attributable to her medical condition and the treatment required to maintain her health."

67.     On May 25, 2018, Ms. Lubin, via counsel, filed a second level appeal of LINA's third termination of her LTD benefits.  The appeal included Dr. Freundlich's report and Ms. Lubin's updated medical records documenting memory loss; impaired concentration; word finding difficulties; foggy-headedness; and ongoing treatment at Memorial Sloan Kettering.

68.     On June 29, 2018 when 35 days of LINA's allotted claim review period had elapsed—LINA sent a letter requesting that Ms. Lubin sign and return an Authorization   for LINA to obtain her Social Security Administration (SSA) file.

69.     On June 16, 2018, counsel sent Ms. Lubin's signed SSA authorization to LINA.

70.     After receiving the authorization, LINA wrote that it would be tolling its review of Ms. Lubin's claim until September 13, 2018.

71.     At the end of the tolling period, LINA had 10 days remaining of its initial 45-day review period to render a determination on Ms. Lubin's second level of appeal pursuant to 29 C.F.R. § 2560.503-(i)(1)(i) and (i)(3)(i) as it had already exhausted 35 days to review the claim

before requesting the SSA authorization. Pursuant to 29 C.F.R. §2560.503-1(f)(3), "the period for making the benefit determination shall be tolled from the date on which the notification of the extension sent to the claimant until the date on which the claimant responds to the request for additional information."

72.     On September 13, 2018, LINA sent a letter requesting an extension of 45 days to complete review of Ms. Lubin's second level of appeal.  LINA's letter stated that it needed to additional 45 days in order to "review the records existing in your client's file, including those received during the appeal process."  LINA stated, "we are sending the entire file for an independent medical review."

73.     The initial 45-day review period for Ms. Lubin's appeal expired no later than September 24, 2018.

74.     LINA's September 13, 2018 letter did not provide special circumstances warranting an extension as the items it claimed it needed the extension for are standard in disability claims.

75.     Even if LINA did have good cause for an extension, the second 45-day review period for Ms. Lubin's appeal expired as of November 8, 2018.  Therefore, LINA's deadline to render a decision on Ms. Lubin's appeal expired on September 24, 2018.

76.     To date, LINA has failed to render a determination on Ms. Lubin's second level of appeal.

77.     On October 17, 2018, the claim handler evaluating Ms. Lubin's appeal asked counsel if counsel and/or Plaintiff could provide the raw data from Ms. Lubin's neuropsychological testing with Dr. Freundlich.

78.     LINA's request for the raw data indicated that in the nearly five months since LINA received Ms. Lubin's appeal—the heart of which is her neurocognitive status—LINA had

not taken the necessary action to obtain the raw testing data. LINA confirmed that LINA had not requested the raw testing data from Dr. Freundlich as of October 17, 2018.

79.     Counsel advised LINA that the American Psychological Association guidelines would not permit Dr. Freundlich to provide his raw testing data to counsel directly and that Dr. Freundlich was the only person who could furnish the raw data.  Counsel advised LINA to provide a proper authorization for the release of Dr. Freundlich's raw data

80.     On October 17, 2018, the claim handler at LINA sent a letter to counsel purporting to "confirm" the conversation of October 17, 2018, and enclosing a blank and standard medical authorization for Ms. Lubin to sign.

81.     On October 22, 2018, counsel wrote to LINA and advised that the authorization provided was not acceptable, and that LINA needed to provide a proper authorization specifying the name of the reviewer so that Dr. Freundlich could provide his raw data directly to that person in accordance with APA guidelines. Counsel wrote, "I asked for you to provide an authorization for the raw data.  Instead, you provided another copy of a generic Disclosure Authorization that LINA already has a copy of…LINA is to immediately provide an authorization identifying its neuropsychological reviewer and authorizing release to that individual specifically."

82.     After LINA failed to provide either a proper raw data authorization or the name of its reviewer, counsel contacted LINA on October 30, 2018.

83.     Counsel reiterated to LINA via the supervisor that ethically counsel is not entitled to the raw data and that in order for LINA to obtain it LINA must furnish a proper release or at least identify the name of the reviewer so that Dr. Freundlich can send it directly to the reviewer.

84.     Not until October 30, 2018—over five months after receipt of Ms. Lubin's second level of appeal—did LINA provide the specific information required to facilitate release of the raw data—namely, the name of the paper reviewer.

85.    Counsel furnished an authorization with the name of the reviewer to Dr. Freundlich, who released his raw data after finally receiving what LINA should have requested no later than June for this neurocognitive-based claim.

86.    On November 8, 2018—the 90th day (allowing for tolling) of LINA's claim review—LINA sent a letter advising that it still had not obtained its neuropsychological reviewer's report.

87.    On November 26, 2018, LINA sent a letter claiming that Ms. Lubin's claim was still in review and that it "hoped" to render a decision following a vocational review.

88.    To date, Plaintiff (through her counsel) has not received a decision with respect to Ms. Lubin's second level of appeal.

89.    Ms. Lubin has availed herself of all of the administrative remedies available under the LTD Policy.

## AND FOR A FIRST CAUSE OF ACTION

90.    Ms. Lubin repeats and re-alleges each and every allegation set forth above at paragraphs 1-89 as if fully set forth herein again.

91.    Ms. Lubin is and has been continuously disabled within the meaning of the terms of Group Disability Policy No. FLK-030545. As such, she is entitled to benefits under the policy.

92.    At all times relevant herein, LINA has failed to follow reasonable claims procedure as required by ERISA 503, 29 U.S.C. § 1133 and the accompanying regulations in that LINA has terminated Ms. Lubin's benefits despite her total disability due to her physical condition; terminated Ms. Lubin's benefits without any substantial change in the medical evidence of record; ignored the plethora of evidence from Ms. Lubin's physicians who have actually examined Ms. Lubin and have detailed Ms. Lubin's serious impairments; disregarded Ms. Lubin's objective and subjective evidence of disability; disregarded the physical findings of

13

her treating physicians without providing a meaningful explanation; selectively reviewed the evidence in an attempt to justify a denial of Lubin's claim; and improperly treated Ms. Lubin's Social Security Disability Award.

93.     Ms. Lubin has availed herself of her administrative remedies, having appealed LINA's termination of her Long Term Disability benefits twice as permitted by the policy.

94.     To date, LINA has not issued a withdrawal of the termination of benefits under the policy despite the substantial medical evidence of record establishing Ms. Lubin's entitlement to benefits.

95.     By virtue of the foregoing, Defendant has breached the terms of subject policy, which is insured by LINA, under which the Plaintiff, Eugenia Lubin, is a beneficiary and has violated the requirements of the Employee Retirement Income Security Act, 29 USC § § 1001 *et seq.,* 1132 and 1133 *et seq* the applicable regulations promulgated thereunder in a manner that is arbitrary and capricious and wrong.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an Order as follows:

1.     Finding that plaintiff has exhausted her administrative remedies under the LTD policy due to LINA's failure to render a timely decision on her appeal.

2.     Declaring Ms. Lubin disabled within the meaning of the LINA LTD policy.

3.     Ordering LINA to immediately place Ms. Lubin back on claim under the LTD Policy retroactive to April 28, 2017.

4.     Awarding Plaintiff her costs of suit, including reasonable attorney's fees.

5.     Awarding to Plaintiff interest on all unpaid benefits, and waiving any and all premium charged accruing with respect to said policies of insurance.

6.     Granting such further relief as this Court may deem just and proper.

## AND FOR A SECOND CAUSE OF ACTION

96.     Ms. Lubin repeats and re-alleges each and every allegation set forth above at paragraphs 1-95 as if fully set forth herein again.

97.     Ms. Lubin submitted her appeal missive to LINA on May 25, 2018.

98.     On June 29, 2018 when 35 days of LINA's allotted claim review period had elapsed—LINA sent a letter requesting that Ms. Lubin sign and return an Authorization  for LINA to obtain her Social Security Administration (SSA file).

99.     On June 16, 2018, counsel sent Ms. Lubin's signed SSA authorization to LINA.

100.    After receiving the authorization, LINA wrote that it would be tolling its review of Ms. Lubin's claim until September 13, 2018.

101.    At the end of the tolling period, LINA had 10 days remaining of its initial 45-day review period to render a determination on Ms. Lubin's second level of appeal pursuant to 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i) as it had already exhausted 35 days to review the claim before requesting the SSA authorization. Pursuant to 29 C.F.R. § 2560.503-1(f)(3), "the period for making the benefit determination shall be tolled from the date on which the notification of the extension sent to the claimant until the date on which the claimant responds to the request for additional information."

102.    On September 13, 2018, LINA sent a letter requesting an extension of 45 days to complete review of Ms. Lubin's second level of appeal.  LINA's letter stated that it needed an additional 45 days in order to "review the records existing in your client's file, including those received during the appeal process."  LINA stated, "we are sending the entire file for an independent medical review."

103.    The initial 45-day review period for Ms. Lubin's appeal expired no later than September 24, 2018.

15

104.    LINA's September 13, 2018 letter did not provide special circumstances warranting an extension as the items it claimed it needed the extension for are standard in disability claims.

105.    Even if LINA did have good cause for an extension, the second 45-day review period for Ms. Lubin's appeal expired as of November 8, 2018.  Therefore, LINA's deadline to render a decision on Ms. Lubin's appeal expired on September 24, 2018.

106.    On October 17, 2018, the claim handler evaluating Ms. Lubin's appeal asked counsel if counsel and/or Plaintiff could provide the raw data from Ms. Lubin's neuropsychological testing with Dr. Freundlich.

107.    LINA's request for the raw data indicated that in the nearly five month since LINA received Ms. Lubin's appeal—the heart of which is her neurocognitive status—LINA had not taken the necessary action to obtain the raw testing data. LINA confirmed that LINA had not requested the raw testing data from Dr. Freundlich as of October 17, 2018.

108.    Counsel advised LINA that the American Psychological Association guidelines would not permit Dr. Freundlich to provide his raw testing data to counsel directly and that Dr. Freundlich was the only person who could furnish the raw data.  Counsel advised LINA to provide a proper authorization for the release of Dr. Freundlich's raw data

109.    On October 17, 2018, the claim handler at LINA sent a letter to counsel purporting to "confirm" the conversation of October 17, 2018, and enclosing a blank and standard medical authorization for Ms. Lubin to sign.

110.    On October 22, 2018, counsel wrote to LINA and advised that the authorization provided was not acceptable, and that LINA needed to provide a proper authorization specifying the name of the reviewer so that Dr. Freundlich could provide his raw data directly to that person in accordance with APA guidelines. Counsel wrote, "I asked for you to provide an authorization

16

for the raw data. Instead, you provided another copy of a generic Disclosure Authorization that LINA already has a copy of…LINA is to immediately provide an authorization identifying its neuropsychological reviewer and authorizing release to that individual specifically."

111.   After LINA failed to provide either a proper raw data authorization or the name of its reviewer, counsel contacted LINA on October 30, 2018.

112.   Counsel reiterated to LINA via the supervisor that ethically counsel is not entitled to the raw data and that in order for LINA to obtain it LINA must furnish a proper release or at least identify the name of the reviewer so that Dr. Freundlich can send it directly to the reviewer.

113.   Not until October 30, 2018—over five months after receipt of Ms. Lubin's second level of appeal—did LINA provide the specific information required to facilitate release of the raw data—namely, the name of the paper reviewer.

114.   Counsel furnished an authorization with the name of the reviewer to Dr. Freundlich, who released his raw data after finally receiving what LINA should have requested no later than June for this neurocognitive-based claim.

115.   On November 8, 2018—the 90th day (allowing for tolling) of LINA's claim review—LINA sent a letter advising that it was still awaiting (had not obtained) its neuropsychological reviewer's report.

116.   On November 26, 2018, LINA sent a letter claiming that Ms. Lubin's claim was still in review and that it "hoped" to render a decision following a vocational review.

117.   To date, Plaintiff (through her counsel) has not received a decision with respect to Ms. Lubin's second level of appeal.

118.   Ms. Lubin has availed herself of all of the administrative remedies available under the LTD Policy.

119.     The ERISA regulations provide, "the plan administrator shall notify a claimant…of the plan's benefit determination on review within a reasonable period of time, but not later than [45] days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for such a hearing) require an extension of time for processing of claim." 29 C.F.R. § 2560.5031-(i)(1)(i) and (i)(3)(i).

120.     The ERISA regulations further provide, "If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45]-day period…The extension notice shall indicate the special circumstance requiring an extension of time and the date by which the plan expect to render the determination on review." 29 C.F.R. § 2560.5031-(i)(1)(i) and (i)(3)(i).

121.     Pursuant to ERISA, LINA's deadline for making a determination on Plaintiff's appeal has passed, and LINA's failure to render a decision to date is not due to any "special circumstances (such as the need to hold a hearing, if the plan's procedures provide for such a hearing)" pursuant to 29 C.F.R. § 2560.503-(i)(1)(i) and (i)(3)(i).

122.     Ms. Lubin's administrative remedies are deemed exhausted pursuant to the ERISA regulations, 29 C.F.R. §2530.503-1.

123.     LINA's delay in rendering a decision in this matter is not in good faith, prejudices Plaintiff, and is not due to good cause or matters outside LINA's control. LINA's delay has prejudiced Plaintiff.

124.     Pursuant to ERISA, Ms. Lubin has exhausted the administrative remedies available under the LTD Plan and is entitled to pursue any available remedies under Section 502(a) of the Act.

125.   Because LINA did not render a decision on plaintiff's appeal, LINA's denial of disability benefits will be evaluated *de novo* by the Court.

**WHEREFORE,** Plaintiff requests that this Honorable Court enter an Order as follows:

7.   Finding that plaintiff has exhausted her administrative remedies under the LTD policy due to LINA's failure to render a timely decision on her appeal.

8.   Declaring Ms. Lubin disabled within the meaning of the LINA LTD policy.

9.   Ordering LINA to immediately place Ms. Lubin back on claim under the LTD Policy retroactive to April 28, 2017.

10.   Awarding Plaintiff her costs of suit, including reasonable attorney's fees.

11.   Awarding to Plaintiff interest on all unpaid benefits, and waiving any and all premium charged accruing with respect to said policies of insurance.

12.   Granting such further relief as this Court may deem just and proper.

<u>**AND FOR A THIRD CAUSE OF ACTION**</u>

126.   Ms. Lubin repeats and re-alleges each and every allegation set forth above at paragraphs 1-125 as if fully set forth herein again.

127.   In 2013, LINA entered into a Multi-State Regulatory Agreement (hereinafter "the Agreement," Exhibit B) with the states of Maine, Ohio, Pennsylvania and California after investigations by these states revealed regular improper claim handling by LINA with regard to insureds who resided in those states.

128.   New Jersey subsequently signed the Agreement and became a participant thereto.

129.   Plaintiff is a resident of New Jersey.

130.   Per the Agreement, LINA stipulated that it would improve and reform its procedures to bring LINA's practices in line with proper claim handling protocol and the standards of the National Association of Insurance Commissioners.

19

131.    LINA's conduct with respect to Ms. Lubin's claim violates provisions of the Agreement, including the Agreement's stipulation that LINA will improve its procedures for gathering medical evidence and documenting conclusions.

132.    By violating the Agreement, LINA has breached the contractual duties it owes to Ms. Lubin thereunder.

133.    By violating the Agreement, LINA has engaged in arbitrary and capricious conduct in violation of ERISA, 29. U.S.C. §§1001 *et seq.,* 1132 and 1133.

**WHEREFORE,** Plaintiff requests that this Honorable Court enter an Order as follows

1.    Finding that plaintiff has exhausted her administrative remedies under the LTD policy due to LINA's failure to render a timely decision on her appeal.

2.    Declaring Ms. Lubin disabled within the meaning of the LINA LTD policy.

3.    Ordering LINA to immediately place Ms. Lubin back on claim under the LTD Policy, retroactive to April 28, 2017.

4.    Awarding Plaintiff her costs of suit, including reasonable attorney's fees.

5.    Awarding to Plaintiff interest on all unpaid benefits, and waiving any and all premium charged accruing with respect to said policies of insurance.

6.    Granting such further relief as this Court may deem just and proper.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff designates Sara Kaplan-Khodorovsky, Esq. as trial counsel.

## CERTIFICATION

I certify that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no other parties should be joined in this action.

Dated:  December 7, 2018          By:

Sara Kaplan-Khodorovsky
The Law Office of Barbara B. Comerford
45 Eisenhower Drive, Suite 280
Paramus, New Jersey 07652
Telephone: 201-485-8806
Fax: 201-485-7014
Attorneys for Plaintiff Eugenia Lubin

21